IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYNNE A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-858 |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Lynne A. ("Claimant") moves to reverse or remand the final decision of the

Commissioner of Social Security ("Commissioner") denying her claim for claim for Disability

Insurance Benefits ("DIBs"). (Dckt. #17). The Commissioner brings a cross-motion for

summary judgment seeking to uphold the decision to deny benefits. (Dckt. #20). The parties

have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C.

§636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the

reasons that follow, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #17),

is granted and the Commissioner's motion to uphold the decision to deny benefits, (Dckt. #20), is

denied.

I.      BACKGROUND

        A.      Procedural History

        On August 13, 2018, Claimant (then sixty-three years old) filed a disability application

alleging disability beginning June 4, 2018, due to mastocytosis, mast cell activation disease, and

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court
refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of
Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

fatigue. (R. 165, 181). Her application was denied initially on November 28, 2018, and upon

reconsideration on March 25, 2019. (R. 75-76, 90). Claimant filed a timely request for a

hearing, which was held on June 19, 2020 before an Administrative Law Judge ("ALJ"). (R. 32-

66). Claimant appeared with counsel and testified at the hearing; a vocational expert ("VE") also

testified. (*Id.*). On July 13, 2020, the ALJ issued a written decision denying Claimant's

application for benefits. (R. 13-31). Claimant filed a timely request for review with the Appeals

Council, who denied her request on December 14, 2020, (R. 1-6), leaving the ALJ's decision as

the final decision of the Commissioner. This action followed.

## B. The Standard for Proof of Disability Under the Social Security Act

In order to qualify for disability benefits, a claimant must demonstrate that she is

disabled. An individual does so by showing that she cannot "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of

work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability

claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in

substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i).

At step two, the ALJ determines whether a claimant has one or more medically determinable

physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from

anatomical, physiological, or psychological abnormalities that can be shown by medically

acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical

or mental impairment "must be established by objective medical evidence from an acceptable

medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at \*2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

**C.    Evidence Presented to the ALJ**

Again, Claimant seeks DIBs due to mastocytosis, mast cell activation disease, and fatigue, alleging an onset date of June 4, 2018. (R. 165, 181). Because the Court's decision

relates only to the ALJ's assessment of Claimant's non-physical limitations, it will limit its

discussion of the evidence accordingly.

### 1.	Treating physicians

On November 10, 2016, Claimant presented to Thanai Pongdee, M.D., at the Mayo

Clinic for an evaluation of her mastocytosis.[2] (R. 461). Dr. Pongdee noted that Claimant's

referral to Mayo stemmed from a diagnosis of cutaneous mastocytosis in May 2014 and

subsequent failed treatments for worsening symptoms. (*Id*.).

On June 14, 2018, Claimant presented to immunologist Mary Tobin, M.D., for a rash,

concern of mast cell activation, and allergies. (R. 324). Claimant told Dr. Tobin that, in around

October 2014, she first noticed a physical reaction to various "triggers," such as electromagnetic

fields, smells, noises, vibration, heat, stress, or exercise, which caused symptoms such as

dizziness, brain fog, fatigue, shortness of breath, and flushing. (R. 325). From 2014 to 2016,

Claimant saw a hematologist and oncologist, underwent testing, and attempted various

medications and physical therapy without improvement. (*Id*.).

On February 20 and 26, 2019, Claimant presented to clinical psychologist Joshua Barras,

Ph.D. (R. 450). She related to Dr. Barras that she previously suffered from depression, anxiety,

and sleep disturbance but never sought formal treatment to address these conditions. (*Id*.). After

a formal interview and numerous mental status examinations, Dr. Barras noted that Claimant's

---

[2] Mastocytosis is a rare disease defined as:

> [A] condition where certain immune cells, called mast cells, build up under the skin and/or bones, intestines and other organs. . . . caus[ing] a range of symptoms, including itchy bumps on the skin, gastrointestinal issues . . . [and] can increase the risk of anaphylaxis when patients come across certain environmental triggers.

Cleveland Clinic, *Mastocytosis* (Sept. 17, 2020), https://my.clevelandclinic.org/health/diseases/5908-mastocytosis. Cutaneous mastocytosis affects the skin only; systemic mastocytosis is more severe and affects the skin, bone marrow, and other organs. *Id*.

"emotional status [was] characterized by depressed mood, intermittent anxiety, and somatic

preoccupation." (R. 451-52). Claimant was typically isolated from others, her affect was

depressed and anxious with restricted range, and she had mild psychomotor retardation. (R.

452). Claimant's daily energy levels and appetite were diminished and her sleep was disturbed

four out of seven nights per week. (*Id.*). Dr. Barras noted that multiple tests confirmed mild to

moderate depression but that her neurocognitive abilities were normal, including testing in the

eighty-second percentile on the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV")

test. (R. 454). Dr. Barras diagnosed Claimant with Persistent Depressive Disorder, or

dysthymia, and referred her for individual psychotherapy. (*Id.*).

On January 11, 2020, treating psychologist Lynn Sheban, Ph.D., completed a mental RFC

Statement on Claimant's behalf. (R. 704-07). Dr. Sheban met with Claimant twice monthly for

forty-five minutes per session but did not note when their treating relationship began. (R. 704).

Dr. Sheban evaluated Claimant for mastocytosis, mood disorder due to physiological conditions

with major depressive episodes, and anxiety disorder due to other medical conditions, which

began as late as June 2018. (*Id.*). Dr. Sheban indicated that Claimant's functional mental

limitations would preclude performance for fifteen percent or more of an eight-hour workday

and noted that her physical symptoms exacerbate her behavioral health issues.[3] (R. 704-06). Dr.

Sheban concluded that Claimant "would not be able to work due to physical illnesses and

conditions." (R. 707).

---

[3] Dr. Sheban's worksheet regarding mental limitations contained checkboxes, each of which indicated a "percent preclusion," broken out by twenty categories of workplace activities. Dr. Sheban indicated fifteen percent or higher preclusion for nineteen of twenty categories; Dr. Sheban indicated ten percent preclusion for the twentieth and final category, "set realistic goals or make plans independently of others." (*Id.*).

On February 5, 2020, Dr. Tobin submitted a physical RFC assessment form on Claimant's behalf through her personal assistant. (R. 700-03). Dr. Tobin diagnosed cutaneous mastocytosis and mast cell activation syndrome resulting in symptoms of dizziness, fatigue, brain fog, confusion, flushing, blurred vision, and allergic reactions to certain triggers; she stated Claimant was fatigued and confused at times with flat affect; she suffered from depression and anxiety. (R. 700). According to Dr. Tobin, Claimant would be "off task" for more than thirty percent of an eight-hour workday due to her physical and/or mental limitations. (R. 703).

2.        **State Agency Physicians**

Claimant participated in a twenty-five minute consultative psychological evaluation on November 15, 2018 with Roberta Stahnke, Psy.D. (R. 390). Claimant told Dr. Stahnke that her chief complaints were mastocytosis, fatigue, and breathing problems, each of which affected her ability to concentrate. (*Id*.). Dr. Stahnke observed Claimant's thought processes were well organized, her comprehension was intact, and her speech was normal. (R. 391). Dr. Stahnke made no diagnosis of Claimant's condition and she concluded that Claimant did not meet criteria for any major mental illness notwithstanding the fact that Claimant reported intermittent problems with concentration and fatigue when under stress. (R. 392). Dr. Stahnke further opined that Claimant's psychological symptoms were not severe enough to prevent her from performing work-related activities at that time. (*Id*.).

On November 27, 2018, Claimant's DIBs claim was reviewed at the initial level by Dr. Calixto Aquino. (R. 67-76). After considering the existing medical record (including Dr. Stahnke's psychological evaluation), Dr. Aquino determined that Claimant's depressive and related disorders were of secondary priority and non-severe. (R. 65, 71). Dr. Aquino further found that Claimant's mental impairments imposed mild limitations on her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or

6

maintain pace; and (4) adapt or manage herself. (R. 71). Dr. Aquino concluded that Claimant is not disabled. (R. 75). Claimant's claim was next reviewed at the reconsideration level by Dr. Charles Kenney on March 20, 2019. (R. 78-90). After reviewing Claimant's records and Dr. Aquino's findings, Dr. Kenney found that Claimant required environmental limitations to her RFC and he reaffirmed that Claimant's mental impairments created the same four mild limitations that Dr. Aquino found. (R. 84-87). Dr. Kenney also concluded that Claimant was not disabled. (R. 90).

###### D.      The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant engaged in substantial gainful activity during the period from the alleged onset date of June 4, 2018. (R. 18). At step two, the ALJ determined that Claimant suffered from the severe impairments of basal cell carcinoma, cutaneous mastocytosis, mast cell activation syndrome, asthmatic bronchitis, osteoarthritis of the lumbar spine, and "osteoarthritis of the right left ankle status post open reduction internal fixation." (*Id.*).

The ALJ further noted that Claimant suffered from the medically determinable mental impairments of depressive disorder and anxiety disorder and that these impairments, "considered singly and in combination," caused Claimant to experience "mild limitations" in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. (R. 19-20). The ALJ further found that "[b]ecause the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that

there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." (R. 20) (emphasis in original).

At step three, the ALJ concluded that Claimant had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Regulations, including listings 1.02 (dysfunction of a major joint); 1.04 (disorders of the spine); 3.03 (asthma); 8.05 (dermatitis); and 13.03 (cancer of the skin). (*Id*.). Before turning to step four, the ALJ concluded that Claimant had the RFC to perform light work as defined in 20 C.F.R. §404.1567(b), except that Claimant: "must work in an environmentally controlled setting with no pulmonary or skin irritants." (*Id*.). The ALJ included no other non-exertional limitations. At step four, the ALJ concluded that Claimant was capable of performing her past relevant work as a pharmacist (DOT code 074.161-010), a skilled position (specific vocational preparation ("SVP") of 7) with light exertion. (R. 25). Thus, the ALJ found Claimant was not under a disability from June 4, 2018 through July 13, 2020, the date of the decision. (R. 26).

## II.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul,* 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free

from legal error.  *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290

F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by

reweighing the facts, resolving conflicts, deciding credibility questions, making independent

symptom evaluations, or otherwise substituting its judgment for that of the Commissioner.

*McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th

Cir. 2008).  Instead, the court determines whether the ALJ articulated an "accurate and logical

bridge" from the evidence to his conclusions.  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

This requirement is designed to allow a reviewing court to "assess the validity of the agency's

ultimate findings and afford a claimant meaningful judicial review."  *Scott v. Barnhart*, 297 F.3d

589, 595 (7th Cir. 2002).  Thus, even if reasonable minds could differ as to whether the claimant

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and

supported by substantial evidence.  *Elder*, 529 F.3d at 413 (citation omitted).

III.    ANALYSIS

   A.    **The ALJ erred by failing to account for the limitations resulting from
          Claimant's mental impairments when determining Claimant's RFC.**

As outlined above, the ALJ found that Claimant's major depressive disorder and anxiety

disorder were non-severe impairments that nonetheless caused her to experience mild limitations

in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3)

concentrate, persist, or maintain pace; and (4) adapt or manage herself.  (R. 19-20).  The ALJ's

finding regarding Claimant's mental limitations is consistent with the findings of the state

agency consultants, whose opinions the ALJ found to be persuasive.  (R. 24).  Although the ALJ

acknowledged that his step two analysis was "not a residual functional capacity assessment," and

that the "mental residual functional capacity assessment used at step four . . . requires a more

9

detailed assessment," (R. 20), the ALJ did not account for Claimant's mental limitations in his

RFC assessment and questions to the VE. (R. 20, 55-60). Nor did the ALJ explain why he

believed that Claimant's mental limitations did not warrant the inclusion of non-exertional

limitations in the RFC.

Claimant asserts, among other things, that the ALJ erred by not including non-exertional

limitations in her RFC to account for the limitations created by her mental impairments. (Dckt.

#17 at 10). Because this argument has merit, the Court finds that a remand to the Social Security

Administration is warranted and it will not address Claimant's remaining arguments. *See*

*DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ

did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do

not address DeCamp's other arguments."). Claimant is free to re-assert these arguments on

remand.

"The RFC is an assessment of what work-related activities the claimant can perform

despite [her] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v.*

*Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to

the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a

claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work,

including those that do not individually rise to the level of a severe impairment, . . . [and] [a]

failure to fully consider the impact of non-severe impairments requires reversal." *Denton v.*

*Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Golembiewski v.*

*Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). That "a non-severe impairment may not

significantly limit a claimant's ability to work when viewed in isolation" does not mean that it

cannot "'be critical to the outcome of a claim' when viewed in combination with other

10

limitations." *Muzzarelli v. Astrue*, No. 10 C 7510, 2011 WL 5873793, at *23 (N.D.Ill. Nov. 18, 2011), *quoting* SSR 96-8p.

Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into her RFC even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g., DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin*, 758 F.3d 850, 857-59 (7th Cir. 2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand."). Moreover, "[i]f the ALJ intended to incorporate restrictions caused by Claimant's mild mental limitations into the RFC, she was obligated to explain how she did so." *Viviana R. v. Kijakazi*, No. 19-cv-07419, 2022 WL 3354840, at *5 (N.D.Ill. Aug. 12, 2022), *quoting Muzzarelli*, 2011 WL 5873793, at *23; *Anthony W.*, 2022 WL 1062334, at *3 ("While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. . . . [T]he Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole.").

Conversely, if the ALJ did not believe Claimant's mental impairments warranted non-exertional limitations in the RFC, she was obligated to explain why. *Muzzarelli*, 2011 WL 5873793, at *23; *Joanne Y. v. Kijakazi*, No. 21-cv-1050, 2023 WL 3389367, at *6 (N.D.Ill. May 11, 2023); *Thomas G. v. Kijakazi*, No. 20-cv-5860, 2022 WL 4234967, at *5 (N.D.Ill. Sept. 14,

2022); *Viviana R.*, 2022 WL 3354840, at *5. An ALJ's failure to provide such an explanation leaves the Court unable to follow the ALJ's reasoning and, therefore, requires remand so that the ALJ can provide clarification. *Muzzarelli*, 2011 WL 5873793, at *23-24; *Viviana R.*, 2022 WL 3354840, at *5 (collecting cases).

Here, despite the ALJ's assurance at step two of his decision, he did *not* provide "a more detailed assessment" of the mental RFC used at steps four and five. (R. 20). Moreover, the ALJ failed to incorporate any non-exertional limitations into the RFC to accommodate the mild limitations in Claimant's capabilities – namely: the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself – that the ALJ found that Claimant's mental impairments created. (R. 19-20). Nor did the ALJ provide any explanation as to why Claimant's mild mental limitations did *not* require any non-exertional limitations in the RFC.[4]

The ALJ's failure to address the mild limitations created by Claimant's mental impairments is particularly problematic because the determination of non-disability was based on the ALJ's finding that Claimant had the ability to perform her past work as a pharmacist, a skilled position. (R. 25). Courts have repeatedly recognized that even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C.*, 2019 WL 339514, at *3 (citing cases); *Teri D. v. Kijakazi*,

---

[4] The ALJ did state that he found Dr. Stahnke's opinion persuasive after noting that she "assessed no work-related mental limitations and opined that the claimant is capable of handling her own financial affairs." (R. 24). However, this statement does not provide a sufficient explanation for the ALJ's decision not to include any non-exertional limitations into Claimant's RFC. Dr. Stahnke – who documented Claimant's report of "intermittent problems with concentration and fatigue when she gets stressed" – found only that Claimant's "psychological symptoms are not severe enough to prevent her from performing work-related activities at the present time." (R. 392). This finding does not preclude the possibility that Claimant requires non-exertional limitations in the RFC to account for her mild mental limitations.

No. 20 C 4999, 2023 WL 2789326, at *4 (N.D.Ill. Apr. 5, 2023); *Joanne Y.*, 2023 WL 3389367, at *5-6; *Hovi*, 2013 WL 3989232, at *16. Moreover, the medical records (including those from Dr. Stahnke's examination) indicate that although Claimant's mental impairments are initially triggered by environmental factors, the impairments worsen in stressful situations, such as those one would encounter in skilled work. (*See, e.g.,* R. 390-92, 450, 704-07).

For these reasons, the ALJ's decision cannot be upheld. On remand, the ALJ must either incorporate non-exertional restrictions into the RFC that account for Claimant's mental impairments' impact in the four broad areas of mental functioning or explain why such limitations are unwarranted.

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment, (Dckt. #17), is granted and the Commissioner's motion to uphold the decision to deny benefits, (Dckt. #20), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**Date: May 22, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**

13